**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

CITIZENS OF THE KARST, INC., *et al.*,

**Plaintiffs,**

**v.**

UNITED STATES ARMY CORPS OF ENGINEERS, *et al.*,

**Defendants.**

**Civil No.** 14-1592 (FAB)

**OPINION AND ORDER**

BESOSA, District Judge.

Citizens of the Karst, Inc., Fernando Marquez-Loyola, and Javier Biaggi-Caballero (collectively, "plaintiffs") brought this action against the United States Army Corps of Engineers ("Corps"), Thomas P. Bostick, in his official capacity as United States Army Chief of Engineers and Commanding General of the Corps, and Alan M. Dodd, in his official capacity as District Commander of the Corps Jacksonville District (collectively, "Corps defendants"). (Docket No. 35.) Plaintiffs claim that the Corps violated the Clean Water Act ("CWA") and Corps regulations by not providing adequate public notice before issuing a permit authorizing Energy Answers Arecibo, LLC ("Energy Answers") to fill jurisdictional waters. (Docket No. 35 at p. 2.) Plaintiffs include Energy Answers as a defendant pursuant to Federal Rule of Civil Procedure 19(a) because it has a substantial interest in the case. Id. at p. 5.

On the same day that they filed their second amended complaint, plaintiffs moved for summary judgment. (Docket No. 37.) Energy Answers opposed. (Docket No. 43.) The Corps defendants also opposed and filed a cross-motion for summary judgment. (Docket Nos. 44, 44-2.) Plaintiffs responded, (Docket No. 45), and the Corps defendants replied, (Docket No. 46). For the reasons that follow, the Court **GRANTS** summary judgment in defendants' favor and **DENIES** plaintiffs' motion for summary judgment.

## I. BACKGROUND

### A. Plaintiff Marquez's Declaration

Plaintiff Fernando Marquez-Loyola ("Marquez") submitted a declaration under penalty of perjury to support plaintiffs' standing to bring suit. (Docket No. 37-2.) The Court draws the following uncontested facts from his declaration.

Marquez is a resident of Arecibo, Puerto Rico. (Docket No. 37-2 at p. 1.) Since 1998, Marquez has owned two buildings in La Puntilla sector of Arecibo. Id. at p. 3. He lives and works in one of the properties and rents out parts of the other for commercial, cultural, and residential purposes. Id. His properties are located adjacent to (and near the mouth of) the Rio Grande de Arecibo. See id.; Docket No. 37-3 (image depicting aerial view of Rio Grande de Arecibo mouth and the town of Arecibo); Docket No. 37-4 (image depicting aerial view of Marquez's properties adjacent to the Rio Grande de Arecibo); Docket No. 37-5

(photo taken from Marquez's property showing unobstructed view of the river).

La Puntilla sector and Marquez's properties are susceptible to flooding from the Rio Grande de Arecibo. (Docket No. 37-2 at p. 3.) Marquez's properties flooded in 1998, 2003, 2010, 2012, and have flooded on other occasions. Id. During severe storms, the flood waters reached high levels and caused property damage. Id. at p. 4; see Docket Nos. 37-7 through 37-13 (photos depicting floods on Marquez's street and their effects on his properties). As a result, Marquez lives in constant fear of personal harm and property loss from floods. (Docket No. 37-2 at p. 5.)

Marquez's properties are located about 1.5 miles from the area where Energy Answers will discharge fill material into the Rio Grande de Arecibo floodway pursuant to the permit issued by the Corps. (Docket No. 37-2 at p. 4.) Marquez is very concerned about how this discharge will affect flooding of the Rio Grande de Arecibo and the potential consequences to his property and safety. Id. at p. 5. This concern causes him emotional distress. Id.

**B. Administrative Record**

Corps defendants provided the Court with the 2,006-page Administrative Record ("AR") in PDF format on a CD. See Docket Nos. 19; 19-1 (certification and index of the AR). The Court draws the following facts from the AR.

Energy Answers applied for a permit pursuant to section 404 of the CWA, 33 U.S.C. § 1344, to construct a waste to energy resource recovery facility in Arecibo, Puerto Rico. (AR at p. 1473.) The project would require filling 2.42 acres of wetlands adjacent to the Rio Grande de Arecibo. Id. To compensate for this impact to the wetlands, Energy Answers proposed to enhance approximately 7.5 acres of wetlands 10.3 kilometers from the project area by planting woody wetland species and native plants. Id. at p. 1475. Energy Answers also proposed preserving 26.1 acres of the project area for conservation and floodway management. Id.

The Corps issued public notice of Energy Answers' application and proposals on July 11, 2011, and set a thirty-day period to accept public comments. See AR at pp. 144, 1473-77. Plaintiffs submitted comments on August 5, 2011. Id. at pp. 1313-21. Among other things, plaintiffs commented that the public notice lacked critical information necessary to comment on the project's compensatory mitigation meaningfully. Id. at p. 1318. The Corps also received comments from the Environmental Protection Agency ("EPA"), which expressed concern that the proposed mitigation might not be adequate. Id. at pp. 1309, 1311. The National Marine Fisheries Service submitted a comment recommending that wetlands be established on the project site. Id. at p. 1307.

In January 2012, Energy Answers revised its proposed mitigation and submitted a detailed mitigation plan. (AR at

pp. 1019-43.) In this mitigation plan, Energy Answers abandoned its original proposal of enhancing 7.5 acres of wetlands 10.3 kilometers from the project area. See id. Energy Answers instead proposed to create 9.31 acres of wetlands on the project site's western portion, which is part of the Rio Grande de Arecibo floodway. Id. at p. 1023.

On November 8, 2012, Energy Answers submitted a hydrologic-hydraulic study ("HH study") to the Corps. (AR at pp. 842-43.) The HH study was prepared in July 2010 and predicts that Energy Answers' new facility will cause water levels in some areas of the Rio Grande de Arecibo floodway to increase by 0.3 meters. Id. at pp. 869-70, 876-77, 881. The study does not address or predict the new facility's impact on the water level at the mouth of the Rio Grande de Arecibo or in La Puntilla sector of Arecibo. See id. at p. 881.

On April 17, 2014, the Corps issued a permit to Energy Answers pursuant to section 404 of the CWA. (AR at p. 2.) The permit specifies that, as compensatory mitigation, Energy Answers must create 9.31 acres of wetlands on the project site, enhance those new wetlands with 900 trees, and preserve 27.67 acres of the project site with a conservation easement. Id. at pp. 10-11.

**II. DISCUSSION**

Plaintiffs claim that the Corps violated the CWA and Corps regulations when it issued a CWA section 404 permit to Energy

Answers without subjecting the approved compensatory mitigation to public notice and comment. (Docket No. 35 at pp. 16-17.) Plaintiffs argue that because the mitigation announced in the public notice (enhancing 7.5 acres of wetlands 10.3 kilometers from the project site) was "totally different" than the mitigation ultimately approved in the permit (creating 9.31 acres of wetlands on the project site), the Corps was required to issue a supplemental public notice to announce that change and give the public an opportunity to comment on it. (Docket No. 37 at pp. 19-21.)

Plaintiffs seek (1) a declaration that the Corps violated the CWA and Corps regulations, (2) an order revoking the permit and enjoining the Corps from reissuing the permit until it complies with notice requirements, and (3) an award of costs and attorneys' fees. (Docket No. 35 at pp. 17-18.)

The Court first discusses whether plaintiffs have standing to bring suit and then analyzes the merits of their claim.

**A. Standing**

The Corps defendants argue that the Court lacks jurisdiction over this case because plaintiffs do not have standing. (Docket No. 44-2 at pp. 8-12.) Plaintiffs have the burden of demonstrating standing, Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992), and only one plaintiff needs to have standing for the Court to exercise

jurisdiction, Dubois v. U.S. Dep't. of Agric., 102 F.3d 1273, 1282 (1st Cir. 1996).

"The doctrine of standing addresses whether a particular plaintiff has 'such a personal stake in the outcome of [a] controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.'" Nulankeyutmonen Nkihtaqmikon v. Impson, 503 F.3d 18, 26 (1st Cir. 2007) (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)). To establish standing, a plaintiff must show (1) that she or he suffered an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) that there is a causal connection between the injury and the challenged action; and (3) that it is likely that the injury will be redressed by a favorable decision. Lujan, 504 U.S. at 560-61 (internal quotation marks and citations omitted).

Plaintiffs claiming violations of procedural rights, such as those created by the CWA, however, "receive 'special' treatment when it comes to standing." Dubois, 102 F.3d at 1281 n.10. A plaintiff "who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy." Lujan, 504 U.S. at 573 n.7. The United States Supreme Court gave the following example of this relaxed standard:

> [O]ne living adjacent to the site for proposed construction of a federally licensed dam has standing to

> challenge the licensing agency's failure to prepare an environmental impact statement, even though he cannot establish with any certainty that the statement will cause the license to be withheld or altered, and even though the dam will not be completed for many years.

Id. The Supreme Court contrasted this example with someone who lives "at the other end of the country from the dam." Id. That person would not have standing to sue the licensing agency because she or he would have "no concrete interests affected." Id.

Here, plaintiff Marquez claims that the Corps failed to follow the notice and comment procedure required by the CWA and Corps regulations before issuing Energy Answers a CWA section 404 permit. (Docket No. 35 at p. 17.) This brings his claim within the procedural standing analysis. Accordingly, because the standard for immediacy is relaxed, to establish an injury sufficient for standing purposes, plaintiff Marquez "need only show" that the notice and comment procedure required by the CWA and Corps regulations was "'designed to protect some threatened concrete interest' personal to [him]." Nulankeyutmonen, 503 F.3d at 27 (quoting Lujan, 504 U.S. at 572-73 nn.7-8).

Plaintiff Marquez's threatened concrete interest is evident: he lives, works, and owns property 1.5 miles from the area where Energy Answers will discharge fill material into the Rio Grande de Arecibo floodway; his properties are adjacent to the Rio Grande de Arecibo and susceptible to frequent flooding from the river, which has caused damage; and a study predicted that Energy Answers' new

facility will cause water levels to rise in some areas of the Rio Grande de Arecibo floodway. See Docket No. 37-2 at pp. 1-5; AR at pp. 869-70, 876-77, 881; Lujan, 504 U.S. at 573 n.7 ("[O]ne living adjacent to the site for proposed construction of a federally licensed dam has standing to challenge the licensing agency's failure to prepare an environmental impact statement . . . ."); Nulankeyutmonen, 503 F.3d at 25-29 (holding that plaintiffs have standing to challenge the approval of a lease to build a liquified natural gas terminal when they "live within a mile" of the project site and use the land and surrounding waters for ceremonial and community purposes); Ashley Creek Phosphate Co. v. Norton, 420 F.3d 934, 938 (9th Cir. 2005) ("[P]laintiffs . . . who own land near the site of a proposed action have little difficulty establishing a concrete interest."). Marquez is therefore not claiming the deprivation of "a procedural right *in vacuo*," see Summers v. Earth Island Inst., 555 U.S. 488, 496 (2009); he has a concrete interest affected by the deprivation of the procedural right.

The notice and comment procedure required by the CWA and Corps regulations are expressly designed to protect against the flooding dangers that plaintiff Marquez fears. See 33 C.F.R. § 325.3(a) ("The public notice is the primary method of advising all interested parties of the proposed activity for which a permit is sought and of soliciting comments and information necessary to evaluate the probable impact on the public interest."); id. §

325.3(c)(1) (requiring that the public notice include a description of the following factors, among others, which the Corps must consider when deciding whether to issue a permit: "flood hazards, floodplain values, . . . safety, . . . considerations of property ownership and, in general, the needs and welfare of the people"); accord id. § 320.4.

In sum, Marquez is seeking to enforce the CWA notice and comment procedure, which is designed to enable the Corps to evaluate a project's probable impact on the public interest. The Corps' failure to comply with this procedure could result in it not evaluating or considering the project's impact on flood hazards in La Puntilla, an area downstream from the project site. Plaintiff Marquez has an interest in that evaluation because he lives, works, and owns property adjacent to the Rio Grande de Arecibo in La Puntilla and frequently experiences floods. The Court therefore finds that plaintiff Marquez, pursuant to the relaxed standard articulated in Lujan, 504 U.S. at 572-73 nn.7-8, and Nulankeyutmonen, 503 F.3d at 27, has established an injury sufficient to assert his procedural right to notice and the opportunity to comment.

The Corps defendants argue that plaintiff Marquez has not demonstrated an injury because Marquez's fear that the project will cause flooding is based on "pure speculation." (Docket No. 44-2 at pp. 8-9.) The injury supporting Marquez's standing, however, is

not the increased flood risk to his properties. The injury is the alleged deprivation of the procedural right to notice and an opportunity to comment on Energy Answers' project. See Nulankeyutmonen, 503 F.3d at 28 (explaining that, in environmental action against government agency, injury was not the potential harm to the environment, but rather the agency's failure to follow environmental law procedures in the permitting process). That deprivation may cause the Corps to overlook potential flood hazards. Were the Court to find that plaintiff Marquez's standing depends on proof that the project will cause the floods that Marquez fears, the Court would essentially be requiring Marquez to conduct the same environmental impact study that he seeks to compel the Corps to undertake by bringing this suit. See Citizens for Better Forestry v. U.S. Dep't. of Agric., 341 F.3d 961, 971-72 (9th Cir. 2003); Docket No. 37 at pp. 12-13 (stating that had plaintiffs had an opportunity to comment, they would have emphasized the need for additional studies to determine the project's impact on flooding in La Puntilla sector, where Marquez lives). The Court does not read the procedural standing standard set forth in Lujan and Nulankeyutmonen to require this much of plaintiffs, even at the summary judgment stage. The Court therefore rejects defendants' argument.

Having found an injury in fact, the Court now discusses whether plaintiffs meet the standing test's causation and

redressability requirements - neither of which defendants challenge. Plaintiffs have established causation because their procedural injury of being denied notice and an opportunity to comment is directly traceable to the Corps' failure to issue a supplemental public notice after the proposed mitigation was changed. See Lujan, 504 U.S. at 560-61.

As for redressability, "[a]ll that is required in cases of procedural injury is 'some possibility that the requested relief will prompt the injury-causing party to reconsider the decision . . . .'" Nulankeyutmonen, 503 F.3d at 28 (quoting Massachusetts v. E.P.A., 549 U.S. 497, 518 (2007). Here, plaintiffs seek an order revoking Energy Answers' permit and enjoining the Corps from reissuing the permit until it complies with notice requirements. (Docket No. 35 at pp. 17-18.) If given the opportunity to comment, plaintiffs would emphasize the need for a direct, indirect, and cumulative impact analysis of the compensatory mitigation as well as a study to determine the project's effects on flooding 1.5 kilometers from the project site at the mouth of the Rio Grande de Arecibo in La Puntilla. See Docket No. 37 at pp. 12-13. Especially because the AR does not show any evidence that the Corps evaluated or considered what effect the project and its compensatory mitigation would have on La Puntilla - an area that frequently floods - the Court finds that there is "at least a chance that proper consideration would convince" the Corps not to

reissue the permit. See Nulankeyutmonen, 503 F.3d at 28. Thus, plaintiffs meet the relaxed redressability standard to establish standing. Accordingly, the Court finds that plaintiff Marquez has standing to bring this suit, and because only one plaintiff needs to have standing for the Court to exercise jurisdiction, Dubois, 102 F.3d at 1282, the case is properly before the Court. Having resolved the jurisdictional question, the Court now moves on to analyze the merits of plaintiffs' claim.

**B. Summary Judgment and Administrative Procedure Act Standards of Review**

Before the Court are the parties' cross-motions for summary judgment. Pursuant to Federal Rule of Civil Procedure 56, the Court will "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Administrative Procedure Act ("APA") provides the standard of judicial review for the Corps' decision to issue the CWA section 404 permit because that decision is a final agency action. See 5 U.S.C. § 706; Town of Norfolk v. U.S. Army Corps of Eng'rs, 968 F.2d 1438, 1445 (1st Cir. 1992). Pursuant to the APA, the Court may set aside an agency action that it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Court's review pursuant to the arbitrary and capricious standard is "highly deferential" and "narrow"; "the agency's actions are presumed to be valid," and the

Court "may not substitute its judgment for that of the agency." River St. Donuts, LLC v. Napolitano, 558 F.3d 111, 114 (1st Cir. 2009). The Court is also limited to considering only the administrative record and does not engage in additional fact-finding. Atieh v. Riordan, 727 F.3d 73, 75-76 (1st Cir. 2013). "The relevant inquiry" is "whether the administrative record sufficiently supports the agency's decision." Id. at 76.

**C. Corps' Compliance with Notice Requirements**

Congress enacted the CWA "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To achieve this goal, the CWA prohibits the discharge of pollutants into navigable waters. Id. § 1311(a). There is an exception, however, to this general prohibition. Pursuant to CWA section 404, the Secretary of the Army, acting through the Corps, "may issue permits, after notice and opportunity for public hearings[,] for the discharge of dredged or fill material into the navigable waters at specified disposal sites." Id. § 1344(a). The Corps must exercise this authority in accordance with EPA guidelines (published in 40 C.F.R. pt. 230) and its own regulations (published in 33 C.F.R. ch. 2).

An applicant seeking a section 404 permit begins the permit process formally by submitting an application to the Corps. "The application must include a complete description of the proposed activity." 33 C.F.R. § 325.1(d)(1). It must also include "either

a statement describing how impacts to waters of the United States are to be compensated for or a statement explaining why compensatory mitigation should not be required for the proposed impacts." Id. § 325.1(d)(7).

Once the Corps receives a complete application, it must publish public notice of the application within fifteen days. 33 U.S.C. § 1344(a). The notice must "include sufficient information to give a clear understanding of the nature and magnitude of the activity to generate meaningful comment." 33 C.F.R. § 325.3(a). Specifically with respect to mitigation, the public notice "must contain a statement explaining how impacts associated with the proposed activity are to be avoided, minimized, and compensated for." Id. § 332.4(b)(1). "The level of detail provided in the public notice" with respect to mitigation "must be commensurate with the scope and scale of the impacts." Id. After notice is published, the public has the opportunity to comment on the project proposal. Id. § 325.2(a)(3).

The Corps "will issue a supplemental, revised, or corrected public notice if in [its] view there is a change in the application data that would affect the public's review of the proposal." Id. § 325.2(a)(2).

Here, plaintiffs do not challenge the sufficiency of the public notice that the Corps issued on July 11, 2011. Rather, plaintiffs argue that the Corps should have published a

supplemental notice after the mitigation announced in the original notice was changed from enhancing 7.5 acres of wetlands 10.3 kilometers from the project site to creating 9.31 acres of wetlands on the project site. (Docket No. 37 at pp. 19-21.)

Thus, the merits issue before the Court is whether the AR sufficiently supports the Corps' decision not to publish a supplemental notice or whether that decision was arbitrary, capricious, or an abuse of discretion. See 5 U.S.C. § 706(2)(A); Atieh, 727 F.3d at 76. Regulations give the Corps great discretion in this matter; it must issue a supplemental notice only if "in [its] view" the change from the original notice "would affect the public's review of the proposal." 33 C.F.R. § 325.2(a)(2). The Court must be "highly deferential" to the Corps' discretionary decision. See River St. Donuts, 558 F.3d at 114.

Here, the AR reflects that the new on-site mitigation will provide "additional enhanced wildlife habitat, storm buffering, sediment filtration, [and] floodwater storage, and [will] reduce[] the potential for nutrients and contaminants in the site drainage run off, resulting in the enhanced ability to protect the Rio Grande de Arecibo." (AR at p. 149.) The Corps determined that this change in mitigation satisfied the EPA's concern that the originally proposed mitigation would not be adequate. Id. at pp. 148-50. Thus, the change in mitigation reduced the adverse

environmental impacts of Energy Answers' project and was in response to comments already received.

A steady line of courts has upheld the Corps' decision not to publish a supplemental notice after a change decreased either the scope of the project or its adverse impacts. See, e.g., Galveston Beach to Bay Pres. v. U.S. Army Corps of Eng'rs, No. CIV.A. G-07-0549, 2009 WL 689884, at *14 (S.D. Tex. Mar. 11, 2009) (upholding Corps' decision not to issue supplemental notice where change to proposed project involved decreasing the project's scope); Sierra Club v. Pena, 915 F. Supp. 1381, 1397 (N.D. Ohio 1996) (upholding Corps' decision not to issue supplemental notice where revised application resulted in reduction in the amount of wetlands affected by the project), aff'd sub nom. Sierra Club v. Slater, 120 F.3d 623 (6th Cir. 1997); Sierra Club v. U.S. Army Corps of Eng'rs, 935 F. Supp. 1556, 1581 (S.D. Ala. 1996) (upholding Corps' decision not to issue supplemental notice of change that reduced the wetland impacts from 16.9 acres to 7.4 acres); cf. Fund for Animals, Inc. v. Rice, 85 F.3d 535, 545 (11th Cir. 1996) (upholding Corps' decision not to issue supplemental notice after applicant added an access road to the project that would require filling less than one-half acre of additional wetlands); Town of Abita Springs v. U.S. Army Corps of Eng'rs, No. CV 15-451, 2015 WL 9315745, at *13 (E.D. La. Dec. 23, 2015) (upholding Corps' decision not to issue supplemental notice after

applicant added more detailed information to its application in response to comments received after first public notice).

In the three cases relied upon by plaintiffs, see Docket No. 45 at pp. 15-17, the courts held that the Corps failed to include "pivotal data" in the original public notice. See Ohio Valley Envtl. Coal. v. U.S. Army Corps of Eng'rs, 674 F. Supp. 2d 783, 804 (S.D. W. Va. 2009) (holding that Corps erred by issuing public notice that "contained no substantive information on mitigation"); Friends of the Earth v. Hall, 693 F. Supp. 904, 948 (W.D. Wash. 1988) (holding that Corps erred by failing to give notice of a monitoring plan because it was "the single most important feature" of the project); Nat'l Wildlife Fed'n v. Marsh, 568 F. Supp. 985, 991, 994-95 (D.D.C. 1983) (holding that Corps erred by failing to issue notice of a "staff evaluation," which evaluated benefits and rated alternative sites, because it was "the most important document influencing the [Corps'] decision" and differed substantially from information included in the public notice). This case is readily distinguishable from those cases because nothing in the AR suggests that the change in mitigation reducing adverse environmental impacts was "pivotal data." See Ohio Valley, 674 F. Supp. 2d at 808 ("[A] post-comment change to a permit application that reduces adverse environmental effects does not warrant the same consideration as a post-comment . . .

monitoring plan, pivotal data, or other rationale that provides the basis for a determination of no significant degradation.").

In sum, it was reasonable for the Corps to conclude that the change in mitigation would not affect the public's review of the proposal because the change reduced the adverse environmental impacts of Energy Answers' project and was in response to comments already received. The Corps' decision not to issue a supplemental notice was therefore not arbitrary, capricious, or an abuse of discretion.

## III. CONCLUSION

After carefully considering the Administrative Record, the applicable law, and the parties' arguments, the Court concludes that the Corps' decision not to publish a supplemental notice before issuing Energy Answers a CWA section 404 permit was not arbitrary, capricious, or an abuse of discretion. Accordingly, the Court **DENIES** plaintiffs' motion for summary judgment, (Docket No. 37), and **GRANTS** Corps defendants' cross motion for summary judgment, with prejudice (Docket No. 44).

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, February 12, 2016.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE